# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES**<br><br>**v.**<br><br>**STERLING CARTER**<br><br>Defendant. | Case No.<br><br>**18 U.S.C. § 641**<br>**(Theft of Public Funds)**<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT AND ARREST WARRANT

I, Frank G. D'Amico, being first duly sworn, hereby depose and state as follows:

## PURPOSE OF AFFIDAVIT

1. I make this affidavit in support of a Criminal Complaint charging STERLING CARTER with 18 U.S.C. § 641 (theft of public funds) (the "SUBJECT OFFENSE").

2. I submit that this affidavit establishes probable cause that CARTER did willfully and knowingly embezzle, steal, purloin, and convert to his own use more than $1,000 of money of the United States, the U.S. House of Representatives, and the congressional office of Congressperson A, in violation of 18 U.S.C. § 641.

## BACKGROUND OF AFFIANT

3. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since September 2002. I am presently assigned to the FBI's Northern Virginia Resident Agency located in Manassas, Virginia and have been responsible for conducting public corruption, election law, and fraud against the government investigations since August 2005. As such, I am familiar with common schemes and practices employed by persons engaged in offenses related to such matters. As a FBI Special Agent, I am duly authorized to investigate violations of the laws of the United States and have served as the primary agent on numerous investigations into

the alleged violations of various federal statutes, including but not limited to, theft of government funds, conspiracy, bribery, false statements, obstruction of justice, and money laundering. Immediately prior to my current tenure with the FBI, I was employed as a U.S. Pretrial Services Officer for the U.S. District Court for the District of New Jersey for approximately five years. As a law enforcement officer, I am authorized to execute warrants issued under the authority of the United States. I have served as the affiant on numerous search and arrest warrants and executed such warrants.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant. It does not set forth all my knowledge, or the knowledge of others, about this matter. The dates and times listed in this affidavit should be read as "on or about" dates.

## **PROBABLE CAUSE**

5. From August 2019 to January 2021, Defendant STERLING CARTER worked as the Director of Operations for the congressional office of Congressperson A, an elected Member of the U.S. House of Representatives.

6. The office of the Chief Administrative Officer ("CAO") of the U.S. House of Representatives was responsible for disbursing the annual Member Representation Allowance ("MRA") to each Congressperson. Congressional offices used the MRA to fund employee salaries, employee bonuses, and miscellaneous office expenses.

7. The U.S. House of Representatives Office of Payroll and Benefits ("OPB"), a component within the CAO's office, was responsible for issuing salary and bonus payments to congressional employees.

8. Employees in Congressperson A's congressional office received an annual salary paid in twelve monthly installments.

9. Public Official A, Congressperson A's Chief of Staff, in consultation with Congressperson A, was responsible for determining employees' salaries, whether an employee should receive a bonus, and the dollar amount of any bonus to be paid out.

10. Only Congressperson A and Public Official A could authorize salary increases or bonuses for employees.

11. To effectuate a salary increase, CARTER, as Director of Operations, had to fill out and process a Payroll Authorization Form ("PAF"). The PAF would reflect the employee's new annual salary and the date on which the salary change would take effect.

12. To effectuate a bonus payment, CARTER had to fill out and process two PAFs. First, CARTER had to fill out and process a PAF that reflected a temporary salary increase proportionate to the authorized bonus amount—that is, a PAF that reflected the employee's regular salary, plus twelve times the amount of the intended bonus. Second, CARTER had to fill out and process a PAF that returned the employee's salary to its original level at the end of the month so the employee would only receive a one-time bonus payment, instead of a recurring salary increase.

13. When Congressperson A or Public Official A authorized a salary increase or bonus, CARTER, as Director of Operations, was responsible for filling out the required PAFs, affixing Congressperson A's signature on the PAFs, and submitting the PAFs to OPB.

14. A signed PAF would cause OPB to issue payments commensurate with the amount indicated on the PAF to the employee listed on the PAF.

15. CARTER was not permitted to sign Congressperson A's name on PAFs without authorization from Congressperson A or Public Official A.

16. Between November 2019 and January 21, 2021, in the District of Columbia, CARTER fraudulently filled out, signed, and submitted unauthorized PAFs causing OBP to pay CARTER approximately $80,491.67 in unauthorized payments from Congressperson A's MRA. Specifically:

a. CARTER submitted an unauthorized PAF, effective November 1, 2019, temporarily increasing his own salary from $54,000 to $138,000, resulting in CARTER receiving an unauthorized bonus of approximately $6,000 in November 2019.

b. CARTER submitted an unauthorized PAF, effective December 19, 2019, increasing his own salary from $54,000 to $126,000, resulting in CARTER receiving approximately $74,491.67 in unauthorized salary payments from December 2019 to January 2021.

17. CARTER concealed these unauthorized payments to himself by, among other actions, presenting Public Official A an inaccurate spreadsheet of the salaries and bonuses of the employees in Congressperson A's congressional office, which did not reveal CARTER's inflated salary.

## **CONCLUSION**

18. I affirm that the information in this affidavit is true and accurate to the best of my knowledge and belief. I submit that there is probable cause to believe that CARTER committed the SUBJECT OFFENSE and request that the Court issue an arrest warrant for CARTER.

Respectfully submitted,

_____
Frank G. D'Amico, Special Agent
Federal Bureau of Investigation

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 this 14th day of February 2022.

_____
HON. ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE

5